## Steets v. Sovereign Construction Co., Ltd.

*Richter, Levy, Lord, Toll & Cavanaugh,* for plaintiff.

*Kolander & Saltzberg* and *Francis E. Marshall,* for defendants.

GUERIN, J., July 16, 1963.—On June 14, 1960, defendant entered into a written contract with the City of Philadelphia wherein it agreed to be the general contractor for the construction of a Police Administration Building. The specific provision thereof applicable herein provided as follows:

"It is understood and agreed that the party of the second part shall be deemed and considered an in-

dependent contractor in respect to the work covered by this agreement, and shall assume all risks and responsibility for casualties of every description in connection with the work, except that he shall not be liable or responsible for delays or damage to work caused by acts of God, acts of public enemy, acts of government, quarantine restrictions, general strikes throughout the trade, or freight embargoes not caused or participated in by the Contractor. Party of the second part shall have charge and control of the entire work until completion and acceptance of the same by party of the first part. Party of the second part shall be alone liable and responsible for, and shall pay, any and all loss and damage sustained by any person or party either during the performance or subsequent to the completion of the work covered by this agreement, by reason of injuries to person and damage to property, buildings and adjacent work, that may occur either during the performance or subsequent to the completion of the work covered by this agreement, or that may be sustained as a result or consequence thereof, irrespective of whether or not such injuries or damage be due to negligence or the inherent nature of the work. Party of the second part shall observe all State and City Laws, Ordinances and regulations, and shall defend and save harmless the City of Philadelphia (and, in case of work done on or adjacent to railway property, the railway company) from all suits and claims for loss of life or injury occurring to employes who perform such work, including that of repair or maintenance. Party of the second part agrees to fully indemnify, protect and save harmless the City, the Director and his subordinates, from any and all liability and from all suits and actions of every kind and description brought or which may be brought against them or any of them, for or on account of any loss sustained by any person or party either during the per-

formance or subsequent to the completion of said work, or that may be sustained as a result or consequence thereof, irrespective of whether or not such injuries or damage be due to negligence or to the inherent nature of the work. The term 'work' as used herein shall be deemed to include work of repair or maintenance performed under this agreement, irrespective of whether or not the same is required by the terms hereof. In the event of the party of the first part sustaining any loss or damage from claims for which the party of the second part is liable and responsible as above set forth and provided, the party of the second part agrees to pay to the party of the first part, on demand, the amount of such loss or damage, including any and all costs sustained in connection therewith. . . ."

On or about July 27, 1961, plaintiff, an employe of Eastern Granite Company, a subcontractor of Cornell Company, which in turn was a subcontractor of defendant, fell or was caused to fall from some scaffolding as a consequence of which he incurred certain injuries. Thereafter he instituted the present action seeking damages from defendant in the sum of $150,-000. There being no issue of fact herein, and being satisfied that there is no merit to plaintiff's legal arguments, we granted defendant's motion for judgment on the pleadings, and an appeal has been taken.

First, it is agreed that defendant was the statutory employe of plaintiff within the meaning of The Workmen's Compensation Act, Act of June 2, 1915, P. L. 736, art. 1, sec. 101, et seq., as amended, 77 PS §1, et seq.; secondly, plaintiff has been awarded damages under said act as defendant's employe for the injuries sustained as a result of his accident of July 27, 1961.

In support of his contention that he is entitled to additional damages from defendant, plaintiff argues first, that he is a third party beneficiary under the above mentioned contract between defendant and the

City of Philadelphia; secondly, that The Workmen's Compensation Act does not excuse or relieve defendant from the performance of the voluntarily assumed contractual obligations; and finally, that article I, sec. 17, of the Constitution of Pennsylvania prohibits a statutory employer from being relieved from his voluntarily assumed contractual obligations, notwithstanding the fact that he and an injured employe have accepted coverage under The Workmen's Compensation Act.

We have examined each of these arguments and have carefully considered the authorities cited by plaintiff in support thereof, and find no substance or merit to his position. In this regard it is interesting to note that the arguments advanced herein have been raised in other cases wherein the issues presented were identical with those now before us and, in each and every instance, they were rejected. See Silverman v. Food Stores, Inc., 407 Pa. 507; Roney v. Paul Tishman Co., 303 F. 2d 777, affirming on appeal in a per curiam opinion, Roney v. Paul Tishmain (sic) Co., 200 F. Supp. 75.

In Silverman v. Food Fair Stores, Inc., supra, wife-plaintiff sustained personal injuries when she fell on a parking lot adjacent to defendant's market. Defendant occupied the premises under a lease which provided, inter alia, as follows:

" 'Tenant shall, at its own cost and expense make all repairs and replacements necessary to keep and maintain demised premises in reasonably good condition and repair, . . . Tenant agrees that it will, at its own cost and expense, comply with and conform to all laws, ordinances, rules, regulations and requirements . . . for the correction, prevention and abatement of nuisances, violations and other grievances. . . .

" 'Tenant shall indemnify and save harmless Landlord from any and all liability, damage, expense, cause of action, suits, claims or judgments arising from

injury or death to person or damage to property upon demised premises or upon the adjoining streets and sidewalks, of every nature, arising out of the use, occupancy, management or control of demised premises by Tenant. . . . Tenant agrees that it will, at all times during the term hereof, maintain and pay for general liability insurance insuring both Landlord and Tenant, . . .' "

Plaintiffs' attorney commenced an action of assumpsit on the theory that his clients were third-party beneficiaries under the provisions of the contract of lease hereinabove quoted. The lower court sustained defendant's preliminary objections and entered judgment in its favor. On appeal our supreme court wrote, at pages 509, 510:

"For anyone to be a third party beneficiary entitled to recover on a contract both parties to the contract must so intend and must indicate that intention in the contract. Spires v. Hanover Fire Ins. Co., 364 Pa. 52, 70 A. 2d 828 (1950); Burke v. North Huntingdon Twp., 390 Pa. 588, 136 A. 2d 310 (1957). 'The question whether a contract was intended for the benefit of a third person is one of construction. The intention of the parties in this respect is determined by the terms of the contract as a whole, construed in the light of the circumstances under which it was made.' 12 Am. Jur., Contracts, §20, p. 832, §280, cited in Mowrer v. Poirier & McLane Corp., 382 Pa. 2, 114 A. 2d 88 (1955).

"There is nothing in the terms of the contract, construed in the light of the circumstances under which it was made, which leads to the conclusion that the parties intended it to benefit anyone but themselves. The learned court below, in its opinion sustaining the demurrer, aptly asked and answered the controlling questions as follows: 'Can it be that this landlord and this tenant had the notion that their contract include a hus-

band whose wife was injured on the leased premises, or even the injured wife. The present lease-contract does not contemplate or touch such beneficience to a third party as beneficiary. Rather, the intent is to benefit only the landlord in certain circumstances by holding him free from liability. The landlord is the one to be indemnified of any liability he might brace against.'

"A careful scrutiny of the instrument sued upon convinces us that the court below correctly decided that: 'Here, the tenant and landlord agreed that if the landlord is sued, the tenant will protect and defend and pay, if liable, and to make sure of the effectuation of any contingency the tenant was to get a "liability policy." It is an agreed sequence and consequence in the thread of relationship as landlord and tenant; it means that and not more. It is a duty of the tenant created by the will of the parties and by no reasonable contemplation or expectation could reach to and include anyone but the promisee.' "

As in the Silverman case, it is clear that neither defendant Sovereign Construction Co., Ltd. nor the City of Philadelphia intended that plaintiff was to be a third party beneficiary under their agreement of June 14, 1960; that their agreement was intended to benefit no one but themselves.

In the Roney case, supra, plaintiff's attorney instituted suit on behalf of a subcontractor's employe against defendant general contractor for personal injuries alleging that said defendant committed an assault and battery upon him by causing or permitting a piece of lumber to fall upon him; and further; that said defendant by deliberate, intentional, and wilful acts, caused plaintiff's injury. There, plaintiff's counsel argued, as is argued herein, that plaintiff was a third party beneficiary under a contract which defendant had entered into with the General State Authority and, as a consequence thereof, the provisions of The Work-

men's Compensation Act were inapplicable. The trial judge ruled, and was sustained on appeal in Roney v. Paul Tishmain Co., supra, that plaintiff could not recover against defendant on the theory that he was a third party beneficiary under its contract with the General State Authority, and further, that plaintiff was limited to compensation payable under The Compensation Act. In so deciding, the opinion of the court reads, at page 76, as follows:

"Under Pennsylvania law, the 'statutory employer' provision of the Workmen's Compensation Act does not include intentional injury done for personal reasons, but does include all other injuries, including those caused by the conditions of the premises on which the injury occurred. Dolan v. Linton's Lunch, 397 Pa. 114, 152 A. 2d 887 (1959). The record does not allege that the injury was caused for personal reasons. The bare allegation that an 'assault' was committed does not take the case out of the limitation imposed by the Workmen's Compensation Act. Plaintiff has not sustained his burden of showing that the Pennsylvania Workmen's Compensation Act does not apply."

This ruling is equally applicable to plaintiff's contentions herein that he was a third party beneficiary, and that he was not limited to compensation under The Workmen's Compensation Act.

Plaintiff's arguments overlook the very simple and basic fact that "An employer's liability to his employee for compensation under the Workmen's Compensation Act for injuries received by the employee in the course of his employment is not a *'limited liability'* as the appellant mistakenly terms it. It is the *whole* liability under the parties' statutory agreement to be bound by the provisions of the act, and, where such an agreement exists, the injured employee has no other right of action": Socha v. Metz, 385 Pa. 632, 637. As the court stated in Swartz v. Conradis, 298 Pa. 343, at pages 345

and 346: "When the relationship of contractor, sub-contractor and employee springs into existence, the Compensation Act takes hold; the common law relation of the parties theretofore existing is changed into a statutory relation. . .

"When the statutory employer accepts article III *he is relieved of all liability for compensation at common law.* Section 303 makes the 'agreement [referred to in section 302] operate as a surrender by the parties thereto of their rights *to any form or amount of compensation* . . . or to any method of determination thereof, other than as provided in article III of this act." (Italics supplied.) The latter is particularly true, assuming arguendo that plaintiff had any rights under the agreement of June 14, 1960, since his employment was subsequent to the execution of said agreement between defendant and the City of Philadelphia.

In Raines v. Pennsylvania Threshermen and Farmers' Mutual Casualty Insurance Co., 391 Pa. 175, plaintiff first suffered a sprained ankle, and after gangrene developed, the leg had to be amputated. Plaintiff asserted that defendant's failure to provide proper medical care was the cause thereof and sued his employer's compensation carrier in trespass, later adding assumpsit counts, both unsuccessfully, first, for breach of his statutory duty to provide him with proper medical care; secondly, for breach of its agent's promise to provide him with proper medical care; and thirdly, for negligently breaching its duty to provide him with proper medical care. The court wrote at page 176:

" 'We think that the effort to shift from trespass to assumpsit does not change the situation. The contract that plaintiff seeks to invoke cannot be set apart from the insurance contract, upon which it depends.' " (Italics supplied.)

Finally, there is no merit to plaintiff's argument that to rule that he was entitled only to workmen's compen-

sation benefits would be in violation of article I, sec. 17 of the Pennsylvania Constitution. Plaintiff overlooks one simple and very well established fact, namely, that said constitutional provision has no relevancy herein because its application was retrospective in nature, not prospective. As our Superior Court wrote in Wiley v. Pennsylvania Public Utility Commission, 186 Pa. Superior 309, at page 320:

"The denial of this application does not, as Wiley suggests, infringe upon his constitutional rights. Any agreement between Wiley and Tidewater came into existence long after the Public Utility Law of 1937 provided for the certification of contract carriers. Such agreement would not be within the purview of the constitutional protection."

Here too, both the agreement of June 14, 1960, and plaintiff's contract of employment came into existence long after the passage of The Workmen's Compensation Act of June 2, 1915, as amended.

For the above reasons, defendant's motion for judgment on the pleadings was granted. Judgment was entered in favor of defendant and plaintiff's complaint was dismissed.